IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Shannon Sturm, | Case No. 11 CV 199 |
| Appellant, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| United States Trustee, | |
| Appellee. | |

## INTRODUCTION

This matter is before the Court on Appellant Shannon Sturm's ("Sturm") appeal from two bankruptcy court orders. The first order, entered on January 7, 2011, conditionally granted Appellee United States Trustee's ("the Trustee") Motion to Dismiss for Abuse pursuant to 11 U.S.C. § 707(b). The bankruptcy court entered the second order, an Order of Dismissal, on January 27, 2011, after Sturm failed to convert her case to one seeking relief under a different Bankruptcy Code chapter by the deadline identified in the January 7 order. In February 2011, this Court granted the parties' Motion to Consolidate the separate appeals (Doc. No. 6 at ¶ 9). For the reasons set forth below, this Court reverses and remands to the bankruptcy court for further proceedings consistent with this Opinion.

## BACKGROUND

Sturm filed for Chapter 7 bankruptcy in July 2010 (Doc. No. 1-2 at 2), seeking discharge of more than $51,000 in consumer debt spread across seven credit cards (Doc. No. 19-1 at 21–23). Sturm's spouse did not join in her filing. Sturm also submitted as part of her filing a required form

(Judicial Conference of the United States, Official Form 22A) entitled "Chapter 7 Statement of Current Monthly Income and Means-Test Calculation." Because her Annualized Current Monthly Income of $88,019 exceeded the state two-person household median (Form B22A at line 13), Sturm was required to calculate her monthly disposable income to determine if her Chapter 7 filing was presumptively abusive, and thus subject to dismissal under 11 U.S.C. § 707(b)(2) (Doc. No. 1-1 at 2).

A debtor's Current Monthly Income, which provides the base from which a debtor's monthly disposable income emerges, includes any amount that an entity, including a non-filing spouse, contributes "on a regular basis for the household expenses of the debtor or the debtor's dependents." 11 U.S.C. § 101(10A)(B). Those portions of a non-filing spouse's Current Monthly Income that do not contribute on a regular basis to household expenses are termed "marital adjustments" (Form B22A at line 17). Disposable income is then calculated using Form B22A, which subtracts, among other sums, applicable expenses identified in the Internal Revenue Service's National and Local Standards from a debtor's Current Monthly Income. 11 U.S.C. § 707(b)(2)(A)(ii).

Determining a debtor's disposable income provides a bankruptcy court insight into a bankruptcy petitioner's ability to satisfy the consumer debt for which Chapter 7 discharge is sought. *See In re Clemons*, 2009 WL 1733867, *4 (Bankr. C.D. Ill. 2009) ("The assumption underlying the means test is that after deducting certain allowances for living expenses . . . the remaining disposable income, as calculated, will actually be available to pay general, unsecured creditors."). A presumption of abuse exists if the debtor's disposable income extended over a five-year period exceeds the lesser of (1) one-quarter of the debtor's nonpriority unsecured debt or $7,025, whichever is greater, or (2) $11,725. 11 U.S.C. § 707(b)(2)(A)(i)(I–II). The court below determined the presumptive abuse

2

thresholds to be monthly disposable incomes of $117 and $295, respectively (Doc. No. 1-1 at 2).[1] If the debts for which the debtor seeks relief are primarily consumer debts and the debtor's monthly disposable income exceeds the presumptive abuse threshold, the court may order, or the Trustee may request, dismissal of the case. 11 U.S.C. § 707(b)(1). In the alternative, the debtor may convert her case to one seeking relief under another Bankruptcy Code chapter. *Id.*

Appellant's completed Form B22A indicated a monthly disposable income deficit of $888 (Doc. No. 1-1 at 3), thus triggering no presumption of abuse. However, the Trustee's alternative calculation of Sturm's monthly disposable income yielded a different conclusion. In particular, the Trustee disputed Sturm's entitlement to both a $761 mortgage- and rent-related Local Standards Housing and Utility deduction ("Local Standards Housing deduction") and a $1,250 marital adjustment for her non-filing spouse's monthly mortgage payment. The house in which Sturm and her non-filing spouse reside is solely owned by Sturm's husband, Kelly Sturm ("Mr. Sturm"), who alone is liable for mortgage payments (Doc. No. 19-1 at 9).

The Trustee also argued Sturm was not entitled to a $1,300 marital adjustment for Mr. Sturm's credit card payments. Catherine Lowman ("Lowman"), the Trustee bankruptcy analyst who prepared the Trustee's alternative means-test calculation, testified the entirety of Mr. Sturm's credit card

---

[1] Both calculations are incorrect. The bankruptcy court's calculation of the 11 U.S.C. § 707(b)(2)(A)(i)(I) threshold appears to assume $7,025 would satisfy one-quarter of the debtor's nonpriority unsecured debt. This assumption does not hold in Sturm's case. One-quarter of Sturm's nonpriority unsecured debt of $51,226.00 equals $12,806.50. The proper 11 U.S.C. § 707(b)(2)(A)(i)(I) threshold as applied to this case is therefore *not* $7,025, or $117.08 per month, but rather $12,806.50, or $213.45 per month. The 11 U.S.C. § 707(b)(2)(A)(i)(II) alternative threshold calculation as calculated by the court below appears to contain a typographic error. The $11,725 statutory figure represents sixty months of disposable income. To determine the per-month threshold, then, one merely divides $11,725 by 60, yielding $195.42, *not* $295.42. Because the statute directs a court to determine whether a debtor crosses the presumptive abuse threshold according to the lesser of the two figures, the proper measure in this case is $195.42. The Trustee notes the correct presumptive abuse threshold in its brief (Doc. No. 17 at 19 n.9).

3

payments should not be deducted from Sturm's Current Monthly Income "under the theory [the credit cards] were actually used to purchase items for the household" (*id.* at 55). However, Mr. Sturm testified his credit card debt was incurred paying for healthcare and disability costs following a heart attack, purchasing police memorabilia, transportation costs, property taxes, and, possibly, completing repairs to a second house (*id.* at 37–44), but not "household items" (*id.* at 38).

Additional flaws were identified in Sturm's means-test calculation. The Trustee argues, and Sturm concedes, that Sturm should not have taken Local Standards vehicle operation and ownership expense deductions of $496 and $210, respectively, for her non-filing spouse's car (*id.* at 51–52). Lowman also identified available deductions for health, vision, dental, and disability insurance Sturm did not claim (*id.* at 57), but the precise value of these deductions is not apparent. The court below only indicated these unclaimed deductions, together with certain "administrative expenses," would lower Sturm's monthly disposable income by "just under $400" (Doc. No. 1-1 at 11). In total, the Trustee's adjustments raised Sturm's monthly disposable income from a deficit of $888 to a positive $1,455, well above the presumptive abuse threshold (Doc. No. 19-1 at 57).

The bankruptcy court agreed with the Trustee in part, determining Sturm's monthly disposable income exceeded the presumptive abuse threshold. The court decided Mr. Sturm's mortgage payments were regular contributions to Sturm's household expenses, and therefore qualified as Current Monthly Income for which a marital adjustment could not be taken. Accordingly, the court reduced Sturm's mortgage-related marital adjustment by $761, or the value of the Local Standards Housing deduction she had claimed (Doc. No. 1-1 at 8). The court also reduced Sturm's marital adjustment for Mr. Sturm's credit card payments by $1,000, from $1,300 to $300, because Sturm "was unable to controvert [the Trustee's] assertion that the majority of her husband's credit card debt was

4

incurred for household expenses" (*id.*). Lastly, the court refused Sturm's ownership and operation deductions for her husband's car, resulting in an additional $706 upward revision of her monthly disposable income (*id*. at 9).

In total, the bankruptcy court's adjustments resulted in Sturm's monthly disposable income increasing by $2,467, from an $888 deficit to a positive $1,579, and her Chapter 7 filing was found presumptively abusive (*id.* at 11). Based on this finding, the court entered an order directing Sturm to convert her case to one seeking relief under another Bankruptcy Code chapter or face dismissal (*id*. at 12). The conversion deadline identified in the bankruptcy court's January order passed without Sturm converting her case, and the court dismissed Sturm's case.

## STANDARD OF REVIEW

On appeal, the bankruptcy court's conclusions of law are reviewed *de novo*, while findings of fact are reviewed under a clear-error standard, *Behlke v. Eisen (In re Behlke)*, 358 F.3d 429, 433 (6th Cir. 2004), with due regard given to the bankruptcy court's evaluation of witness credibility. Federal Bankruptcy Rule 8013. The bankruptcy court's findings of fact should not be disturbed unless there exists "the most cogent evidence of mistake or miscarriage of justice." *In re Caldwell*, 851 F.2d 852, 857 (6th Cir. 1988) (quoting *Slodov v. United States*, 552 F.2d 159, 162 (6th Cir. 1977)). Findings of fact should not be set aside merely because the reviewing court would resolve ambiguous evidence differently. *West v. Fred Wright Constr. Co.*, 756 F.2d 31, 34 (6th Cir. 1985). A court exercising appellate review should generally decline to consider issues or claims not raised before the trial court. *In re Hood*, 319 F.3d 755, 760 (6th Cir. 2003).

## DISCUSSION

The parties have stipulated to four issues for consideration on appeal from the bankruptcy court's decision (Doc. No. 7). First, the parties ask whether Sturm may claim both a Local Standards Housing deduction and a marital adjustment for Mr. Sturm's mortgage payment. Second, the parties ask whether Sturm may treat all of Mr. Sturm's credit card payments as a marital adjustment. If not, the third issue requires this Court to examine whether sufficient evidence existed to support the bankruptcy court's determination of which portions of Mr. Sturm's credit card payments qualified for a marital adjustment. Fourth, the parties disagree about whether Sturm's initial appeal from the bankruptcy court's January 7, 2011 order stripped the bankruptcy court of the jurisdiction necessary to enter the January 27, 2011 dismissal that followed Sturm's failure to timely convert her case to another Bankruptcy Code chapter.

**Sturm's mortgage-related marital adjustment and Local Standards Housing deduction**

Sturm claimed both a $1,250 marital adjustment for her non-filing spouse's mortgage payment and a $761 Local Standards Housing deduction. These exemptions together reduce her monthly disposable income by $2,011. After determining Sturm failed to refute the Trustee's argument that the mortgage payments for the house in which Sturm resides "did not go largely toward the Debtor's household expenses," Sturm's mortgage-related marital adjustment was reduced by $761 (Doc. No. 1-1 at 8). The bankruptcy court provided no explanation how it determined only $761 of the mortgage payment was dedicated to household expenses; it appears to have preserved Sturm's Local Standards Housing deduction while reducing her marital adjustment by the same amount. Nor did the bankruptcy court articulate why Sturm was allowed a Local Standards Housing deduction.

6

Sturm argues the bankruptcy court erred in denying the mortgage-related marital adjustment. Specifically, she contends that a non-filing spouse's payments on secured debt for which the debtor or her dependents are not contractually liable should not be considered part of the debtor's Current Monthly Income. Sturm further argues she is entitled to the Local Standards Housing deduction regardless of whether she incurs mortgage- or rent-related housing expenses.

In response, the Trustee advances three arguments. First, the Trustee contends no court has permitted a debtor to "double-dip" by claiming both a marital adjustment for a non-filing spouse's mortgage payments and a Local Standards Housing deduction. Second, the Trustee argues the U.S. Supreme Court's recent decision in *Ransom v. FIA Card Servs., N.A.*, 131 S. Ct. 716 (2011), forbids a debtor like Sturm from taking a Local Standards Housing deduction in the absence of actual mortgage- or rent-related housing expenses. Finally, the Trustee argues Mr. Sturm's mortgage payment satisfies a household expense that benefits Sturm, and thus may not be claimed as a marital adjustment.

As an initial matter, this Court finds the Trustee's "double-dip" construct unhelpful in resolving the issues presented here. To the extent that other courts have employed such language in reviewing Chapter 7 means-tests or objections to Chapter 13 plan confirmation,[2] they have done so only to describe legal conclusions reached on grounds other than permissible or impermissible "double-dipping," and for good reason -- the statute says nothing of "double-dipping." *See In re Trimarchi*, 421 B.R. 914, 921 (Bankr. N.D. Ill. 2010) (denying Chapter 13 debtor a marital adjustment

---

[2] Both the Chapter 7 means-test and the Chapter 13 calculation of commitment period and disposable income depend on the same Current Monthly Income definition included in 11 U.S.C. § 101(10A). Therefore, Chapter 13 cases discussing the extent of Current Monthly Income generally are as instructive as a similar Chapter 7 case when addressing the narrow question of available marital adjustments.

7

for her non-filing spouse's mortgage payment). Instead, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA" or "the Act"), P.L. 109-8, which established the current method for calculating Current Monthly Income and disposable income, sets forth separate criteria to determine a debtor's access to various deductions. The Trustee's gloss on the parties' first stipulated issue merely begs the key question: which housing-related deduction, if either, is Sturm entitled? This Court answers this question by separately considering Sturm's claim to both a mortgage-related marital adjustment and a Local Standards Housing deduction.

### *Sturm's mortgage-related marital adjustment*

This Court finds Sturm is entitled to a Marital Adjustment for the entirety of her husband's mortgage payment. This conclusion is reached by observing the general rule that a court should decline to adopt an interpretation of a statute that converts portions of the text into surplusage. *Benson v. O'Brian*, 179 F.3d 1014, 1017 (6th Cir. 1999) (quoting *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 837 (1988)).

A debtor's Current Monthly Income extends to a non-filing spouse's regular contributions to "the household expenses *of the debtor or the debtor's dependents*." 11 U.S.C. § 101(10A)(B) (emphasis added). By contrast, Current Monthly Income in a joint filing includes regular contributions by "any entity" to the household expenses of *both* spouses. *Id.* This distinction indicates Congress sought to exclude, from the debtor's Current Monthly Income, the non-filing spouse's expenses to the extent such expenses are not shared by the debtor. *In re Shahan*, 367 B.R. 732, 740 (Bankr. D. Kan. 2007); *see also In re Quarterman*, 342 B.R. 647, 650–651 (Bankr. M.D. Fla. 2006). Consequently, unless a non-filing spouse is the debtor's dependent, a non-filing spouse's separate expenses do not form part of the "household" for purposes of the Chapter 7 means-test. *In*

8

*re Clemons*, 2009 WL 1733867, at *4 ("[I]t is clear from the wording of the statute that a debtor and the debtor's spouse are no longer presumed to be mutually dependent but that the statute carries a dependency-in-fact requirement."). Only the spouse's (Mr. Sturm's) regular contributions to household expenses of the debtor or her dependents are included in the *debtor's* Current Monthly Income. *In re Stansell*, 395 B.R. 457, 461 (Bankr. D. Idaho 2008) (emphasis added) (citing *In re Grubbs*, 2007 WL 4418146, *3 (Bankr. E.D. Va. 2007)), abrogation in part on other grounds recognized by *In re Robinson*, 2011 WL 864937, *9 & n.22 (Bankr. E.D. Va. 2011).

This view clashes with the more colloquial construction adopted by the court below. Considered in isolation, the bankruptcy court's approach is undoubtedly attractive. The benefit of Mr. Sturm's mortgage payments certainly inures to both Mr. and Mrs. Sturm because, without his timely payments, she would be without a home. *See In re Borders*, 2008 WL 1925190, *2 (Bankr. S.D. Ala. 2008) (noting and rejecting a definition of household expenses that turned on whether the debtor indirectly benefitted from her non-filing spouse's mortgage payments). Why, then, should a court not include in the debtor's Current Monthly Income those obligations exclusive to the non-filing spouse that benefit the debtor?

*In re Trimarchi*, 421 B.R. 914 (Bankr. N.D. Ill. 2010), on which the court below relied, is emblematic of this view. The court in *Trimarchi* refused to grant a Chapter 13 debtor a marital adjustment for her non-filing spouse's mortgage payment when, like in this case, the non-filing spouse alone was liable on the note. The court's denial of the mortgage-related marital adjustment tracked the statute's language, declaring the mortgage payment "regularly paid for the household expenses of the Debtor and her son who reside in the home." *Id.* at 920.

9

But before arriving at this facially correct conclusion, the court revealed the error in its reasoning by observing, "[a] *non-debtor spouse's expenses* paid *for* anyone other than the debtor and dependents of the debtor are appropriately deducted" as a marital adjustment. *Id.* (emphasis added). In effect, the court in *Trimarchi* shifts the perspective from which contributions to Current Monthly Income are examined, asking instead whether a mortgage payment is an expense *of* the non-debtor spouse paid *for* the benefit of the debtor or the debtor's dependents.

But the only questions identified by the statute as relevant for purposes of determining whether a marital adjustment may be claimed are the identity of the payment's recipient and her relationship to the obligation for which payment is expended, not the source of the payment or the benefit it produces. The statute's generic reference to "any entity" is consistent with this debtor-centric construction. 11 U.S.C. § 101(10A)(B).

This qualification on Current Monthly Income is not mere semantics, but is instead necessary to render the statutory framework coherent, and to ensure fidelity to Congress's purpose for adopting the means-test: to ensure "debtors who *can* pay creditors *do* pay them." *Ransom*, 131 S. Ct. at 721 (emphasis in original). Without so qualifying Current Monthly Income, thirteen words of the statute are rendered meaningless ("The term 'current monthly income' . . . includes any amount paid by any entity other than the debtor . . . on a regular basis for the household expenses of the debtor or the debtor's dependents (*and in a joint case the debtor's spouse if not otherwise a dependent*). . . ." 11 U.S.C. § 101(10A)(B) (emphasis added)). If, as the court in *Trimarchi* asserts, the expenses of a non-filing spouse are to be included in Current Monthly Income so long as they vaguely benefit the debtor or her dependent, the distinction between a single and joint filing is unnecessary.

10

Moreover, both Forms B22A and B22C require a court to follow the debtor-centric approach if the forms are to produce an accurate view of the debtor's ability to pay her creditors.[3] In both forms, married, single-filing debtors must include their non-filing spouse's income before marital adjustments become available for sums not regularly contributed to the household expenses of the debtor or the debtor's dependents (Form B22A at line 17; Form B22C at line 19). If the debtor is denied a mortgage-related marital adjustment, that portion of her non-filing spouse's income remains part of the debtor's Current Monthly Income. This addition to Current Monthly Income makes a Chapter 7 debtor more likely to meet an initial presumption of abuse, requiring calculation of disposable income. Likewise, denying a Chapter 13 debtor the same marital adjustment increases her chance of facing a five-year rather than a three-year plan commitment period.

At the same time, even though the bankruptcy court's denial of a marital adjustment treats the debtor's non-filing spouse's mortgage payments as a household expense of the debtor, the debtor may not deduct future payments on this secured debt. Future payments for secured debt may only be deducted "[f]or each of *your debts* that is secured by an interest in property that *you own*" (Form B22A at line 42; Form B22C at line 47) (emphasis added). Though Sturm is not contractually liable for her non-filing spouse's mortgage payment, the approach adopted by the court below treats her as if she were, while also denying her the deduction for future payments on secured debt her husband could claim if he joined in her filing. *See In re Shahan*, 367 B.R. at 738 (noting that if marital adjustments are made to turn on whether a single-filing debtor benefits from her spouse's payments,

---

[3] Chapter 13 debtors use Form B22C to calculate their commitment period and disposable income. See Judicial Conference of the United States, Official Form 22C, available at:
www.uscourts.gov/uscourts/RulesAndPolicies/rules/BK_Forms_Official_2010/B_022C_0 410.pdf  (Apr. 2010) ["Form B22C"].

11

a Chapter 13 debtor would contribute less of her income to payment of her unsecured claims if she filed jointly with her husband).

By adhering to its view of household expenses for purposes of calculating Current Monthly Income, the court below produced a result inconsistent with the Act's purpose of requiring debtors to repay as much of their unsecured consumer debt as possible. *See Ransom*, 131 S. Ct. at 721. While the statute's means-test requirement is intended to prevent an aspiring Chapter 7 debtor from receiving discharge for unsecured consumer debt she could partially satisfy through, for example, a Chapter 13 filing, the Act does not require a debtor to convert her Chapter 7 filing or face dismissal based on an artificially-inflated monthly disposable income calculation arrived at under the approach below.

The bankruptcy court's view of allowable marital adjustments has effects beyond Sturm's Section 707(b)(2) motion, promising perverse impacts on the Chapter 13 conversion requested by Sturm if the outcome below is upheld. Forms B22A and B22C do not differ materially. *In re Sale*, 397 B.R. 281, 287 n.14 (Bankr. M.D. N.C. 2007). Each form calculates monthly disposable income using the same parameters for marital adjustments, Internal Revenue Service Standards deductions, additional living expenses, and future secured debt payment deductions. Under the lower court's approach, Sturm would again be denied a mortgage-related marital adjustment on her Form B22C, which would contribute to her facing a longer plan commitment period and repayment of a higher proportion of her unsecured consumer debt through a future Chapter 13 plan than would be required by the statute. Based on the record before this Court, Mr. Sturm's mortgage payment is apparently a fixed, regular payment, and is thus not a portion of Sturm's disposable income available to her creditors under either a Chapter 7 or Chapter 13 filing.

The plain language of the statute, and the relevant means-test form, do not support the manner in which the bankruptcy court offset Sturm's mortgage-related marital adjustment. Sturm is entitled to a deduction for *any* contributions not dedicated to her household expenses, and therefore she may claim a marital adjustment for the entirety of Mr. Sturm's mortgage payment.

### *Sturm's Local Standards Housing deduction*

The bankruptcy court preserved Sturm's Local Standards Housing deduction despite her admitted lack of any mortgage- or rent-related expenses (Doc. No. 19-1 at 9). Sturm argues on appeal the statute entitles a debtor to take all her applicable Local Standards Housing deduction as determined by the county in which she resides and the size of her household, regardless of whether she actually incurs mortgage- or rent-related expenses. The Trustee again advances its "double-dip" argument, but also asserts that a Supreme Court decision in *Ransom*, issued four days after the bankruptcy court's ruling, requires this Court to deny Sturm's Local Standards Housing deduction. Sturm contends the Trustee's second argument regarding *Ransom* is not properly before this Court because the argument was not raised below.

When the bankruptcy court considered this case, no controlling Sixth Circuit authority existed touching on the Trustee's second theory, and significant circuit disagreements existed elsewhere. *See In re Washburn*, 579 F.3d 934 (8th Cir. 2009) (discussing the circuit split that preceded the Court's decision in *Ransom*). The Trustee's newly-adopted argument could have been raised below, and this Court finds no reason to depart from the general rule counseling against consideration of new issues on appeal.

Nonetheless, this Court cannot ignore the relevance of the Supreme Court's near-unanimous intervening decision, and Sturm's attempt to distinguish *Ransom* from this case fails. While this

13

Court expresses no opinion as to the merits of the Trustee's argument, the Trustee should be allowed to address *Ransom's* holding as it applies to this case. Therefore, the bankruptcy court's determination that Sturm could elect a Local Standards Housing deduction is reversed. On remand, the bankruptcy court is directed to reconsider Sturm's entitlement to a Local Standards Housing deduction in light of *Ransom*.

### Sturm's entitlement to a marital deduction for her non-filing spouse's credit card payments

The issues presented for consideration on this appeal concerning Sturm's credit card-related marital adjustment are: (1) whether the bankruptcy court erred by not allowing Sturm to take a marital adjustment for all her husband's monthly credit card payments; and (2) whether sufficient evidence existed to support the bankruptcy court's determination of the amount of Mr. Sturm's credit card payments eligible for a marital adjustment. These supposedly separate questions, however, truly pose only one question: to what extent may Sturm claim a marital adjustment for her non-filing spouse's credit card payments? The fact that Sturm's husband alone is liable for the credit card payments does not disclose whether these obligations were incurred to satisfy any of Sturm's household expenses.

Sturm argues the statute allows her to claim a marital adjustment for the entirety of her non-filing spouse's credit card payments because the Trustee failed to carry its burden of establishing Mr. Sturm used his credit cards to satisfy Sturm's household expenses. In response, the Trustee argues the bankruptcy court's determination that Sturm could deduct only $300 of her non-filing spouse's monthly credit card payments was not clear error.

As the moving party in this Section 707(b)(2) motion, the Trustee must carry the initial burden of demonstrating by a preponderance of the evidence that Sturm's Chapter 7 filing should be dismissed. *In re Wright*, 364 B.R. 640, 643 (Bankr. N.D. Ohio 2007). If the Trustee clears this

14

hurdle, Sturm's case should be dismissed or converted to another Bankruptcy Code chapter unless she can demonstrate "special circumstances" that permit her to claim greater expenses or adjustments to Current Monthly Income than would otherwise be allowed. 11 U.S.C. § 707(b)(2)(B)(i).

At the Section 707(b) hearing, Mr. Sturm testified regarding his finances, describing the various expenses for which he incurred $20,000 in credit card debt, providing specific dollar amounts in the following categories: $5,000 in disability payment processing fees; $875 for medical examinations; $225 for a catalytic convertor; $7,000 for medical fees related to his 2008 heart attack; and $1,900 in property taxes for two houses (Doc. No. 19-1 at 37–39, 42). Mr. Sturm further testified that $13,000 of his $20,000 credit card debt resulted from non-medical expenses, including gasoline, car repairs, and police memorabilia purchased over the internet (*id.* at 39–40). He used his credit cards to purchase "everything" and "anything" during an almost seven-month-long period between the termination of his light-duty status as a police officer and receipt of his first disability payment sometime in May 2009 (*id.* at 41–42).

Finally, Mr. Sturm invested $8,000 in repairing a second house he inherited from his brother (*id.* at 42–43). However, "the major amount" of these repairs occurred three years before the date of his testimony (*id.* at 44), a period that precedes the August 2008 date at which Mr. Sturm testified he began incurring most of the credit card debt for which Sturm seeks a marital adjustment (*id.* at 37). It is therefore unclear whether Mr. Sturm's substantial investment in this second property comprises a portion of the credit card debt payments for which Sturm seeks a marital adjustment.

The Trustee, through Lowman's testimony, initially sought to deny Sturm any marital adjustment for her husband's credit card debt "under the theory that [Mr. Sturm's credit cards] were actually used to purchase items for the household and therefore were a contribution to the household"

15

(*id.* at 55). She explained her conclusion was based on "the fact that a credit card is ordinarily used for household expenses" (*id.* at 64). This theory represents the only "evidence" in the record addressing Mr. Sturm's credit card payments as a portion of Sturm's Current Monthly Income.

Lowman also provided the bankruptcy court with a revised estimate of the portion of Mr. Sturm's credit card payments that could be claimed as a marital adjustment based on Mr. Sturm's testimony. Lowman would allow Sturm to claim $455 -- 35% of Mr. Sturm's credit card payments attributable to the medical payments -- as a marital adjustment and assumed all other expenses qualified as household expenses for purposes of calculating Current Monthly Income (*id.* at 65). (Because Mr. Sturm's testimony does not clearly indicate when and whether the dollar amounts represent credit card expenditures or accumulated credit card debt, inclusive of interest, this Court cannot determine whether Lowman's assumption holds.)

The court below apparently adopted, in part, this revised estimate allowing Sturm to claim $300 -- 23% of her husband's credit card payments -- as a marital adjustment (Doc. No. 1-1 at 8). Aside from explaining Sturm failed to rebut the Trustee's contention that "the majority of her husband's credit card debt was incurred for household expenses" (*id.*), the bankruptcy court did not discuss the method it used for determining this allowable marital adjustment. While the clear-error standard, under which this Court reviews such a finding, is a high one, the record evidence (consisting of Mr. Sturm's vague, unsubstantiated, and seemingly extemporaneous recital of his credit card debts, and Lowman's conclusion based entirely on a theory of how Mr. Sturm's credit cards were used) does not allow this Court to determine the proper adjustment.

Furthermore, the Trustee bears the burden of establishing that Mr. Sturm's credit card debts were incurred for Sturm's household expenses -- a burden that may not be met using only a theory

16

of credit card usage unsupported by evidence. Under the bankruptcy court's approach (as compared to the Trustee's 35% estimate), Sturm would pay an additional $5,580 on a three-year Chapter 13 plan, or $9,300 on a five-year Chapter 13 plan, sums that represent 10.9% and 18.2%, respectively, of the unsecured debt for which Sturm seeks discharge. Imposing such a significant increase in Sturm's potential Chapter 13 obligation (above the Trustee's already questionable baseline) must be supported by more than an undisclosed hypothesis.

Therefore, because the bankruptcy court committed clear error in determining, without apparent evidence, that $1,000 of Mr. Sturm's credit card payments was attributable to debt incurred for Sturm's household expenses, that finding is reversed. On remand, Sturm is directed to supply the bankruptcy court with detailed written information regarding the sources of Mr. Sturm's credit card obligations, such as Mr. Sturm's credit card statements.

**The effect of Sturm's appeal from the January 7 bankruptcy court order**

Finally, Sturm assigns error to the bankruptcy court's dismissal of her case. She claims to have perfected a timely appeal to the Bankruptcy Appellate Panel four days before the January 24 conversion deadline included in the bankruptcy court's January 7 order. The Trustee argues that order was interlocutory for which Sturm did not seek the bankruptcy court's leave to appeal. The Trustee additionally argues that order merged into the later January 27 order dismissing Sturm's Chapter 7 filing. Sturm counters that because of her alleged timely appeal, the bankruptcy court lacked jurisdiction to enter its January 27 final dismissal order.

This Court previously granted Sturm's unopposed Federal Bankruptcy Rule 8005 Motion to Stay Dismissal of her Chapter 7 filing pending resolution of this appeal (Doc. No. 11). This Court's Order will remain in effect on remand, with Sturm able to proceed in her Chapter 7 filing if, after

resolution of these issues, her filing is found to fall below the presumptive abuse threshold. Thus, this stipulated issue is denied as moot.

## **CONCLUSION**

For the foregoing reasons, the bankruptcy court's determinations, that Sturm was entitled to only a portion of her claimed mortgage-related marital adjustment and that she was entitled to a Local Standards Housing deduction, are reversed. On remand, the bankruptcy court shall reconsider Sturm's claim to a Local Standards Housing deduction in light of *Ransom* and the extent to which Sturm may claim a marital adjustment for Mr. Sturm's credit card payments. Sturm's challenge to the jurisdictional basis of the bankruptcy court's January 27, 2011 order is denied as moot. If the bankruptcy court again determines Sturm's Chapter 7 filing to be presumptively abusive, the bankruptcy court shall grant Sturm leave to convert her bankruptcy filing to seek relief under Chapter 13 of the Bankruptcy Code.

IT IS SO ORDERED.

                                                                 s/ *Jack Zouhary*
                                                                  JACK ZOUHARY
                                                                  U. S. DISTRICT JUDGE

July 14, 2010